NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAR 10 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> SHAHRIAR KALANTARI, AKA Michael Kalantari, <br><br> Defendant - Appellant. | No. 24-4365 <br><br> D.C. No. 2:18-cr-00375-AB-4 <br><br> MEMORANDUM[*] |
| UNITED STATES OF AMERICA, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> SHAHRIAR KALANTARI, AKA Michael Kalantari, <br><br> Defendant - Appellant. | No. 24-7125 <br><br> D.C. No. 2:18-cr-00375-AB-4 |

Appeal from the United States District Court
for the Central District of California
André Birotte, Jr., District Judge, Presiding

Argued and Submitted December 9, 2025

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Pasadena, California

Before: M. SMITH, CHRISTEN, and FORREST, Circuit Judges.

Defendant-Appellant Michael Kalantari was convicted by jury of one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, three counts of health care fraud in violation of 18 U.S.C. § 1347, and one count of conspiracy to engage in the unlicensed wholesale distribution of prescription drugs in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331(t), 333(b)(1)(D), and 353(e)(1)(A). On appeal, Kalantari challenges his convictions, the district court's denial of his motion for a new trial based on newly discovered evidence, the district court's denial of an evidentiary hearing after Kalantari moved for a new trial, and his sentence. Because the parties are familiar with the facts of this case, we do not recount them here except as necessary to provide context for our ruling. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm in part, reverse in part, and remand.

1. Reviewing for plain error, *see* Fed. R. Crim. P. 52(b), we first hold that the government did not plainly err by failing to correct false testimony from its key witness, Yigal Keren, in violation of Kalantari's due process rights pursuant to *Napue v. Illinois*, 360 U.S. 264, 272 (1959). To establish a *Napue* violation, a defendant must demonstrate that: (i) the testimony was false; (ii) the government knew or should have known that the testimony was false; and (iii) the testimony

2                                                                                              24-4365

was material, "meaning there is a 'reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Renzi*, 769 F.3d 731, 751 (9th Cir. 2014) (quoting *United States v. Houston*, 648 F.3d 806, 814 (9th Cir. 2011)).

We start with Keren's testimony regarding his characterization of "patients" versus "guests" at SOUL Housing, which we do not find "so clearly or obviously false such that [Kalantari] has demonstrated plain error." *United States v. Holmes*, 163 F.4th 547, 574 (9th Cir. 2025). Regarding Keren's testimony's about whether he told Gary that he had "active" and "standby" patients, we conclude that, even if Keren's testimony on this topic was false, Kalantari has failed to demonstrate that it was plainly material. *See Houston*, 648 F.3d at 814–15. Keren acknowledged on cross-examination that he "told people that [he] had 500 patients."

We likewise conclude that Kalantari has not established a plain *Napue* violation with Keren's denial that Kalantari asked to review patient files to see if they were real, Keren's testimony about whether the patient files came from a "marketer," and Keren's testimony about whether he understood "the concept of the medical concierge." Kalantari's counsel impeached Keren with his prior inconsistent statements on these topics. Thus, Kalantari has not established a reasonable likelihood that the testimony "could have affected the judgment of the jury." *Holmes*, 163 F.4th at 573 (internal quotations omitted).

Last, we conclude that Kalantari has not established a plain *Napue* violation with Keren's testimony that Kalantari would receive 33% of the black-market sales price. We are not persuaded that Kalantari's testimony about the payment scheme was plainly false, but even if it were false, Kalantari has not demonstrated that it was plainly material. Keren stated at other points during his testimony that Kalantari was paid $200 per prescription, and Kalantari's counsel highlighted this testimony by impeaching Keren based on his prior testimony to FBI agents that Kalantari would be paid "$250 a prescription."

2.     "We review de novo whether a jury instruction misstates the law," but "review the language and formulation of a jury instruction for abuse of discretion." *United States v. Rodriguez*, 971 F.3d 1005, 1012 (9th Cir. 2020) (internal quotation omitted). We are not persuaded that the district court's limiting instruction pursuant to Federal Rule of Evidence 404(b) was an erroneous statement of the law nor that the district court abused its discretion in giving it. The instruction tracks, albeit not exactly, the language in Ninth Circuit Pattern Jury Instruction 2.10 (2022 ed.). According to Kalantari, the pattern instruction requires the district court to make choices to tailor the instruction to the evidence in each case. However, he does not persuasively explain why the district court's decision not to tailor the limiting instruction here rendered the instruction "misleading or inadequate to guide the jury's deliberations." *United States v. Marsh*, 26 F.3d 1496, 1502 (9th

4                                                                                            24-4365

Cir. 1994) (internal quotations omitted).

Kalantari also argues that the limiting instruction was an abuse of discretion because it improperly characterized his statements in the relevant recordings as "acts," and it did so without evidence for the jury to conclude that Kalantari engaged in such acts beyond a reasonable doubt. Again, this argument is unpersuasive. The limiting instruction describes the relevant "evidence" as Kalantari's "statements." It does not, as Kalantari suggests, improperly invite the jury to conclude that Kalantari actually committed the acts contemplated in his statements without evidence. Regardless, even if it did, the error was harmless. *See United States v. Hamilton*, 171 F. Appx. 556, 558 (9th Cir. 2006) (mem.) (citing *United States v. Washington*, 106 F.3d 1488, 1490 (9th Cir. 1997) (per curiam)). Keren testified that they did not follow through with Kalantari's proposals, and Kalantari's counsel argued during closing that "nothing happened" and the statements in the recordings were "not true."

3.     Reviewing for abuse of discretion, *see United States v. Mack*, 362 F.3d 597, 600 (9th Cir. 2004), we affirm the district court's decision to deny a new trial after the parties discovered a mistake with the Medi-Cal claims data that the government presented at trial. Newly discovered evidence warrants a new trial if the defendant can establish: "(1) the evidence is newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence is material to the

issues at trial; (4) the evidence is not (a) cumulative or (b) merely impeaching; and (5) the evidence indicates the defendant would probably be acquitted in a new trial." *United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009) (en banc).

As the government argues, the two substantive Medi-Cal health-care fraud counts were associated with beneficiaries that "had never otherwise received a prescription from Kwon, never filled a prescription at Ultimate Pharmacy, and never received a prescription for HIV treatment." This is true regardless of the number of claims billed as shown in Government Exhibit 204. Thus, the district court did not abuse its discretion in concluding that Kalantari had not established that he would probably be acquitted in a new trial without Exhibit 204. *See id.* Moreover, to the extent that Kalantari's challenge relies on Government Exhibit 1003, plain error review applies because Kalantari did not challenge that exhibit before the district court. *See* Fed. R. Crim. P. 52(b). We likewise conclude that the district court did not plainly err with respect to Exhibit 1003 because other evidence in the record supports each verdict. Thus, we are not persuaded that absent Exhibit 1003, Kalantari would probably be acquitted in a new trial. *See Hinkson*, 585 F.3d at 1264.

4.   Kalantari argues that cumulative error requires reversal based on the government's *Napue* violations, improper 404(b) limiting instruction, and denial of his motion for a new trial. However, because we conclude that the district court

did not err in each instance, there is no error to cumulate. *See United States v. Lindsay*, 931 F.3d 852, 869 (9th Cir. 2019).

5.    We next consider the district court's jury instruction on the *mens rea* required for conspiracy to engage in the unlicensed wholesale distribution of prescription drugs in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331(t), 333(b)(1)(D), and 353(e)(1)(A).  We review this issue for plain error, *United States v. Gear*, 9 F.4th 1040, 1047 (9th Cir. 2021) (per curiam), and may reverse only if (i) there was error; (ii) that is plain; and (iii) that affects substantial rights, *see Jones v. United States*, 527 U.S. 373, 389 (1999).  We also "exercise [our] discretion to correct plain error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (citation modified).

The error here was plain.  Conspiracy under 18 USC § 371 is, "by definition, a specific intent crime."  *United States v. Little*, 753 F.2d 1420, 1443 (9th Cir. 1984).  The "defendant must intend to agree *and* must intend that the substantive offense be committed."  *Ocasio v. United States*, 578 U.S. 282, 288 (2016) (citation modified).  To constitute a felony, the underlying offense— Section 333(b)(1)(D)—requires specific intent that Kalantari "knowingly" engaged in or caused another person to engage in unlicensed wholesale distribution of prescription drugs.  Without knowledge that the distribution would be unlicensed,

the underlying offense here constitutes a misdemeanor subject to lesser penalties. *See* 21 U.S.C. §§ 331(t), 353(e)(1).

The district court did not instruct the jury that Kalantari must know the distribution would be unlicensed. Thus, the first two steps of the plain error inquiry are satisfied. *See United States v. Vazquez-Hernandez*, 849 F.3d 1219, 1225 (9th Cir. 2017) ("Jury instructions misstate the essential elements of an offense when they do not adequately link the intent element of a crime with the required object of that intent.").

Whether this error affected Kalantari's substantial rights—that is, whether there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different," *Gear*, 9 F.4th at 1047 (internal quotations omitted)—depends on whether there is "strong and convincing evidence that the prosecution has adequately proved the missing element of the crime," *United States v. Conti*, 804 F.3d 977, 981 (9th Cir. 2015) (emphasis added) (internal quotations omitted). The evidence at Kalantari's trial *does* establish that his co-conspirators did not have license to distribute prescription drugs, but it does not demonstrate that Kalantari *knew* this fact. *Cf. United States v. Hegwood*, 977 F.2d 492, 497–98 (9th Cir. 1992) ("Knowledge of the purpose behind the conspiracy is an essential element of the crime, and evidence of knowledge must be clear. The

mere presence of a defendant in suspicious circumstances is not enough to imply knowledge." (internal quotations and citation omitted)).

The Government's argument that the jury instructions "as a whole" adequately mitigate any error fails to persuade. As we explained in *United States v. Kim*, 65 F.3d 123, 126 (9th Cir. 1995), "[t]he use of [knowingly] in the conspiracy instruction refers to the joining in the agreement, not the mens rea of the substantive offense." The instructions allowed the jury to find that Kalantari knew the unlawful purpose of the conspiracy without explicitly finding that Kalantari knew Sadovsky was not licensed to distribute the drugs wholesale. *See id.* (explaining that "knowledge of the unlawful purpose of the conspiracy does not instruct the jury to explicitly find knowledge of" an essential element of the offense). As in *Kim*, the jury instructions for Kalantari's conspiracy offense did not remedy the error because the instruction "necessarily refer[red the jury] to the erroneous definition of the substantive offense." *Id*.

Finally, this instructional error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U.S. 157, 160 (1936). The Government's evidence leaves it "open to debate" whether Kalantari had the requisite mental state to prove the offense. *United States v. Murphy*, 824 F.3d 1197, 1205 (9th Cir. 2016). The lack of proper instruction on this issue denied Kalantari "his constitutional right to have all elements of the

crime submitted to the jury, while the government was concomitantly relieved of its obligation to prove every element beyond a reasonable doubt." *Id.* (internal quotations omitted). Therefore, we remand for the limited purpose of resentencing Kalantari on Count 5 as a misdemeanor.

6. Having also reviewed and evaluated the materials considered by the district court, we conclude that the district court did not abuse its discretion related to the government's *in camera*, *ex parte* motion pursuant to the Classified Information Protection Act, 18 U.S.C. app. 3 § 4. *See United States v. Alahmedalabdaloklah*, 94 F.4th 782, 810–11 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 770 (2024).

7. Reviewing for abuse of discretion, *United States v. Mazzarella*, 784 F.3d 532, 537 (9th Cir. 2015), we affirm the district court's decision to deny an evidentiary hearing on Kalantari's claim that the government suppressed material impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The district court concluded that there was no suppression of *Brady* material. But Kalantari argues that the district court should have held an evidentiary hearing because he raised a factual dispute. We find Kalantari's argument to be unavailing. The district court did not deny the motion merely because it was not convinced by Jodie Goldstein's memory; it denied the motion because the presented documents did not demonstrate that the timeline offered by Goldstein

was accurate and because it was not convinced that the allegedly suppressed information "would have substantially altered the verdict in this case."

8. Finally, we conclude that the district court did not err in its calculation of the United States Sentencing Guidelines. Kalantari was sentenced to imprisonment for 23 months, which was a downward departure from the advisory Sentencing Guidelines range. The district court added offense levels pursuant to U.S.S.G. § 2B1.1(b)(1)(G), because it determined that the offenses resulted in approximately $254,532 in loss. On appeal, Kalantari challenges the district court's: (i) loss amount calculation for Count 5; (ii) failure to apply a reduction for uncompleted conspiracies; and (iii) denial of his request for a mitigating role adjustment. We affirm.

First, the district court did not err by finding that Count 5 caused, or was intended to cause, a "loss," and it did not err in its calculation of such "loss." Kalantari's argument that the loss calculation represents the "intended *gain* [to the conspirators] associated with Count 5" is unavailing. Even if we accept that the intended loss in Count 5 is not a loss to Medicare or Medi-Cal, that does not mean that there is no quantifiable loss. As the commentaries to the Sentencing Guidelines suggest, *see* U.S.S.G. § 2B1.1 cmt.3(E)(v), (vi), the sale of unlicensed prescription drugs results in a loss to the regulated, secure supply chain. We hold that the district court did not clearly err in its calculation of the intended loss based

on the value the conspirators presented to their intended buyers. *See United States v. Clayton*, 108 F.3d 1114, 1118–19 (9th Cir. 1997). Kalantari's argument instead goes toward whether the counts were properly grouped for Guidelines purposes pursuant to U.S.S.G. § 3D1.2(b), not toward whether Count 5 led to a "loss." The district court did not plainly err in using "intended loss" to quantify loss. *See United States v. Hackett*, 123 F.4th 1005, 1011–15 (9th Cir. 2024).

Next, we conclude that the district court did not plainly err by failing to apply the three-level reduction that U.S.S.G. § 2X1.1(b)(2) requires for uncompleted conspiracies. Fed. R. Crim. P. 52(b). Section 2X1.1(b)(2) does not apply where "the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control." Here, all that was left of the conspiracy was to complete the sale. But the drugs were not sold because "Gary" was an undercover agent and because Keren instructed his wife to throw out the drugs after he was stopped and his phone seized. The reduction does not apply. *See United States v. Le*, 119 F.4th 700, 705 (9th Cir. 2024) (finding that the reduction did not apply when there was "no evidence of anything that stood in the conspirators' way" to complete the conspiracy).

Last, we reject Kalantari's argument that he is entitled to a mitigating four-level adjustment for his minimal role in the scheme pursuant to U.S.S.G. § 3B1.2(a). The district court did not err in denying the mitigating role adjustment

for the reasons asserted by the government at the sentencing hearing.[1]  Nor did the district court plainly err by failing to explain its reasoning.  The Probation Office did not apply a role adjustment because it determined that Kalantari was an average participant, and the district court adopted the Probation Office's findings (except for certain aspects of the loss calculation).  While district courts must "explain their sentencing decisions," "they do not have to 'tick off sentencing factors to show that [they] considered them.'"  *United States v. Klensch*, 87 F.4th 1159, 1164 (9th Cir. 2023) (quoting *United States v. Diaz*, 884 F.3d 911, 914 (9th Cir. 2018)).  The district court's questions at Kalantari's hearing and its adoption of the Probation Office's findings are sufficient indication that it considered the required factors and did a comparative analysis of Kalantari's conduct.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[1]  The government argues that the merits of this claim are subject to plain error review because Kalantari did not argue his "minimal" role at the sentencing hearing in the context of a role adjustment but rather in the context of the 18 U.S.C. § 3553(a) factors.  Kalantari disagrees because his counsel expressly stated at the sentencing hearing that he requested "a minimal role."  Even assuming that Kalantari preserved his objection, we affirm.