IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-60340

_____


FEBE ROSE BELLE E DEFENSOR; VINTAGE HEALTH RESOURCES INC
                Plaintiffs - Appellants

        v.

DORIS MEISSNER, Commissioner of the United States
Immigration & Naturalization Service
                Defendant - Appellee

_____

Case No. 98-60357

VINTAGE HEALTH RESOURCES INC; VIVIAN MAY P SIBAYAN
                Plaintiffs - Appellants

        v.

DORIS MEISSNER, Commissioner of the United States
Immigration & Naturalization Service
                Defendant - Appellee

_____

Case No. 98-60358

VINTAGE HEALTH RESOURCES INC; MELODY E MENDOZA
                Plaintiffs - Appellants

        v.

DORIS MEISSNER, Commissioner of the United States
Immigration & Naturalization Service
                Defendant - Appellee

_____
Case No. 98-60359

VINTAGE HEALTH RESOURCES INC; FROILENE FE V ATENDIDO
                Plaintiffs - Appellants

        v.

DORIS MEISSNER, Commissioner of the United States
Immigration & Naturalization Service
                Defendant - Appellee

---

Case No. 98-60360

VINTAGE HEALTH RESOURCES INC; JOCELYN A BAYUDANG
                Plaintiffs - Appellants

        v.

DORIS MEISSNER, Commissioner of the United States
Immigration & Naturalization Service
                Defendant - Appellee

---

Case No. 98-60361

VINTAGE HEALTH RESOURCES INC; MARIA CECILIA D CONSOLACION
                Plaintiffs - Appellants

        v.

DORIS MEISSNER, Commissioner of the United States
Immigration & Naturalization Service
                Defendant - Appellee

---

Case No. 98-60362

VINTAGE HEALTH RESOURCES INC; LEONORA B CACERES
                Plaintiffs - Appellants

        v.

DORIS MEISSNER, Commissioner of the United States
Immigration & Naturalization Service
                Defendant - Appellee

_____

Appeals from the United States District Court
for the Northern District of Mississippi

_____

January 17, 2000

Before HIGGINBOTHAM and SMITH, Circuit Judges, and FALLON[*], District Judge.

HIGGINBOTHAM, Circuit Judge:

    Vintage Health Resources and seven Filipino nurses appeal the

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

2

district court's affirmance of the Immigration & Naturalization Service's denial of H1-B visas for the nurses. Because Vintage did not produce evidence sufficient to show that the nurses were members of a "specialty occupation," as required under § 101(a)(15)(H)(i)(B) of the Immigration and Nationality Act, we AFFIRM the denial of H1-B visas.

I.

Vintage is a medical contract service agency which brings foreign nurses into the U.S. locating jobs for them at hospitals as registered nurses. Vintage sought to have seven Filipino nurses classified as H-1B nonimmigrants, performing services in a "specialty occupation." H-1B aliens in a specialty occupation may spend up to six years in the U.S., rather than the one year allowed for regular business travelers.

The INS denied each petition, stating that Vintage failed to establish that the nurses worked in a "specialty occupation," under § 101(a)(15)(H)(i)(B) of the Immigration and Nationality Act. See 8 U.S.C. § 1101(a)(15)(H)(i)(B). A "specialty occupation" is defined in part as one in which the "attainment of a bachelor's or higher degree . . . (or its equivalent) [is] a minimum for entry into the occupation in the United States." Id. § 1184(i)(1)(B).

Vintage produced evidence that it only hired nurses with B.S.N. degrees. The INS claimed, however, that the proper focus of inquiry is not what Vintage as an employment agency required, but instead what the contracting facility required, and Vintage failed

3

to establish that the medical facilities where the nurses would actually work required bachelor degrees. At best, Vintage showed that such facilities preferred nurses with B.S.N. degrees, but did not require that nurses have B.S.N. degrees.

The seven nurses whose petitions were denied appealed to the INS Administrative Appeals Unit, which upheld the denial. The appellants then filed complaints in federal district court, seeking to compel the INS to approve their petitions. The district court dismissed their claims, determining that despite some ambiguity in the regulations, the statutory requirement for a "specialty occupation" was clear: the occupation must be one in which the attainment of a bachelor's degree or higher is the minimum for entry into that occupation, and the nurses had failed to satisfy that requirement. The nurses filed separate appeals, which were then consolidated.

II.

Under the Administrative Procedure Act, agency action is reviewed solely to determine whether it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 5 U.S.C. § 706. In general, a federal agency's interpretation of a statute whose administration is entrusted to it is to be accepted unless Congress has spoken directly on the issue. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844-45 (1984). Even if statutory or regulatory language is ambiguous, deference is usually given to the agency's

4

interpretation.  See United States v. Moses, 94 F.3d 182, 185 (5th Cir. 1996).  Thus, Vintage has a high hurdle to overcome in this case which primarily concerns an agency's interpretation of the following statutes and regulations.

Title 8 U.S.C. § 1101(a)(15)(H)(i)(b) provides for the temporary admission of a nonimmigrant alien "to perform services . . . in a specialty occupation described in section 1184(i)(1) of this title."  Section 1184(i)(1) defines "specialty occupation" as an occupation which requires

> (A) theoretical and practical application of a body of highly specialized knowledge, and
>
> (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

8 U.S.C. § 1184(i)(1).

While the preceding is the statutory definition of "specialty occupation," the related regulations state that a

> [s]pecialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii).

Additionally, 8 C.F.R. § 214.2(h)(4)(iii)(A) defines a standard for specialty occupation positions.  This section states that

> [t]o qualify as a specialty occupation, the position must

meet one of the following criteria:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

Id. § 214.2(h)(4)(iii)(A).

Section 214.2(h)(4)(iii)(A) appears to implement the statutory and regulatory definition of specialty occupation through a set of four different standards. However, this section might also be read as merely an additional requirement that a position must meet, in addition to the statutory and regulatory definition. The ambiguity stems from the regulation's use of the phrase "to qualify as." In common usage, this phrase suggests that whatever conditions follow are both necessary and sufficient conditions. Strictly speaking, however, the language logically entails only that whatever conditions follow are necessary conditions. In other words, if a regulation says "To qualify as a lawyer, one must have a law degree," then a law degree is a necessary but not necessarily sufficient condition for becoming a lawyer, as there may be other requirements. For example, the next regulation may say "To qualify as a lawyer, one must pass the bar exam."

If § 214.2(h)(4)(iii)(A) is read to create a necessary and sufficient condition for being a specialty occupation, the regulation appears somewhat at odds with the statutory and regulatory definitions of "specialty occupation." For example, if an employer always required a bachelor's degree for a particular position (but for no good reason), then the position would qualify for a visa, but would probably not meet the statutory definition unless one assumes that any employer's requirements suffice to prove the U.S. minimum for the relevant occupation.[1]

On the other hand, one might assume that § 214.2(h)(4)(iii)(A) simply imposes a requirement that is related to the statutory and regulatory definitions, but which is not a complete substitute for them. Such a requirement would help confirm a finding that an occupation is a specialty occupation when the occupation's minimum requirements were not well defined in the United States. In such cases, requiring that the position meet one of the four § 214.2(h)(4)(iii)(A) prongs would help ensure that the occupation was a specialty occupation. The problem with this interpretation is that a commonsense reading of § 214.2(h)(4)(iii)(A) indicates an intention to fully implement the definition of "specialty occupation."

Giving Vintage the benefit of the doubt we will assume arguendo that § 214.2(h)(4)(iii)(A) creates necessary and

---

[1]In many cases, such an assumption might be a good rule of thumb for defining "specialty occupation," since an employer incurs a cost by only hiring applicants with degrees. However, if the "employer" is an employment agency, such an assumption may no longer be valid, since the true employer may also be hiring those without degrees for the position.

sufficient conditions for the category of "specialty occupation." Vintage argues that under the third prong, its seven nurses are entitled to visas because Vintage required all of its contract employees to have B.S.N. degrees before it contracted them to medical facilities. Vintage, however, puts forward no reason that it has such a requirement, although the regulation admittedly does not require one. Instead, Vintage simply wants to use its token degree requirements to mask the fact that nursing in general is not a specialty occupation.[2]

In a situation such as this one, however, it does injustice to the statute and regulations to view Vintage as the only relevant employer. For in addition to its token degree requirements, Vintage is at best a token employer. Under § 214.2(h)(4)(ii)(2), an employer is someone who "[h]as an employer-employee relationship with respect to the employees . . ., as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work of any such employee." It is unclear whether Vintage's ability to simply "hire" or "pay" an employee is sufficient standing alone to grant Vintage employer status under this definition. Another interpretation would be that "hire, pay, fire, supervise" are to be read conjunctively as one prong of the test and "otherwise control the work" is to be viewed as an independent prong of the test. Under the latter interpretation, merely being able to "hire" or

---

[2] A bachelor's degree is not a minimum requirement for being a nurse in the United States; associate degrees and other diplomas are accepted. See, e.g., DEPARTMENT OF LABOR, OCCUPATIONAL OUTLOOK HANDBOOK (1996-1997). Notably, Vintage does not contend that its nurses are practicing in a specialized area of nursing which might have different requirements than that of general nursing.

"pay" an employee, by itself, would be insufficient to grant employer status to an entity that does not also supervise or actually control the employee's work.

While the second interpretation accords better with the commonsense notion of employer, we need not decide whether Vintage is or is not an employer under the Act. For even if Vintage is an employer, the hospital is also an employer of the nurses and a more relevant employer at that. The nurses provide services to the hospitals; they do not provide services to Vintage. Even if Vintage mails the nurses' paycheck, the nurses are paid, in the end, by the hospital and not Vintage. The hospitals are the true employers of the nurses, since at root level the hospitals "hire, pay, fire, supervise, or otherwise control the work" of the nurses, even if an employer-employee contract existed only between Vintage and the nurses. As such, the INS interpreted "employer" in § 214.2(h)(4)(iii)(A) to refer to the true employer — namely the hospitals — even though Vintage was the only "employer" petitioning for visas. Under this interpretation, the INS required Vintage to provide information regarding the hospitals' requirements for the nursing positions.

To interpret the regulations any other way would lead to an absurd result. If only Vintage's requirements could be considered, then any alien with a bachelor's degree could be brought into the United States to perform a non-specialty occupation, so long as that person's employment was arranged through an employment agency which required all clients to have bachelor's degrees. Thus,

aliens could obtain six year visas for any occupation, no matter how unskilled, through the subterfuge of an employment agency. This result is completely opposite the plain purpose of the statute and regulations, which is to limit H1-B visas to positions which require specialized experience and education to perform.

For these reasons, it was not an abuse of discretion to interpret the statute and regulations so as to require Vintage to adduce evidence that the entities actually employing the nurses' services required the nurses to have degrees, which Vintage could not do.

AFFIRMED.