**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

UNITED STATES OF AMERICA,
                   *Plaintiff-Appellee*,

v.

MELVYN GEAR,
                *Defendant-Appellant.*

</td>
<td>

No. 19-10353

D.C. No.
1:17-cr-00742-
SOM-1

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the District of Hawaii
Susan O. Mollway, District Judge, Presiding

Argued and Submitted July 16, 2020
San Francisco, California

Filed January 19, 2021

Before: Kenneth K. Lee and Patrick J. Bumatay, Circuit
Judges, and Roslyn O. Silver,* District Judge.

Per Curiam Opinion;
Concurrence by Judge Silver;
Partial Concurrence and Partial Dissent by Judge Bumatay

---

*\* The Honorable Roslyn O. Silver, United States District Judge for
the District of Arizona, sitting by designation.*

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction for violating 18 U.S.C. § 922(g)(5)(B) by possessing a firearm while being an alien who had been admitted to the United States under a nonimmigrant visa.

The panel held that after *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the government must—in order to gain a conviction under § 922(g)(5)(B)—prove a defendant knew he was admitted into the country under a nonimmigrant visa. The panel wrote that establishing that the defendant knew he had an H-1B visa is not enough.

Reviewing the district court's erroneous jury instructions—to which the defendant did not properly object—for plain error, the panel held that the error did not affect the defendant's substantial rights because the record overwhelmingly indicates that the defendant knew it was illegal for him to possess a firearm.

Concurring, Judge Silver agreed that the conviction should be affirmed but wrote separately to write that to the extent the per curiam opinion suggests the government could alternatively prove that the defendant knew his visa was statutorily classified as a "nonimmigrant visa," she does not agree.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Concurring in part and dissenting in part, Judge Bumatay wrote that the defendant showed a reasonable probability that the jury would have reached a different outcome if the jury had been properly instructed, and that the panel should therefore return the determination of the defendant's guilt to the jury.

## COUNSEL

Ted Sampsell-Jones (argued), Dennis P. Riordan, and Donald M. Horgan, Riordan & Horgan, Oakland, California, for Defendant-Appellant.

Marshall Silverberg (argued), Assistant United States Attorney; Marion Percell, Chief of Appeals; Kenji M. Price, United States Attorney; United States Attorney's Office, Honolulu, Hawaii; for Plaintiff-Appellee.

## OPINION

PER CURIAM:

Along with felons, illegal aliens, and other specified groups, Congress proscribed nonimmigrant-visa holders from lawfully possessing a firearm. 18 U.S.C. § 922(g)(5)(B). But to be penalized for violating this law under 18 U.S.C. § 924(a)(2), Congress also required the nonimmigrant-visa holder's knowledge of his "relevant status" as a prohibited possessor. *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019).

In this case, it is uncontested that Melvyn Gear owned a gun. It is also uncontested that he entered the United States

under an "H-1B" visa, and that such a visa is a nonimmigrant visa. The parties' dispute centers on whether the government had to prove that Gear *knew* his H-1B visa was a nonimmigrant visa. We hold that after *Rehaif*, the government must prove a defendant knew he had a nonimmigrant visa to satisfy the statute's mens rea requirement. But because Gear cannot show that he was prejudiced by the erroneous jury instructions, we nevertheless affirm his conviction.

## I.

This case comes to us from down under. Melvyn Gear is a native of Australia who moved to Hawaii in January 2013 to work for a solar power company. Gear entered the United States under an "E-3 visa." That visa is an Australian "specialty occupation" visa. 8 U.S.C. § 1101(a)(15)(E)(iii). Gear's initial E-3 visa was renewed for another two years. At some point, Gear's employer applied for, and Gear received, an "H-1B visa." 8 U.S.C. § 1101(a)(15)(H)(i)(b). During trial, Gear's employer testified that an H-1B visa is "nonimmigrant," but he also stated that he filed the immigration paperwork "on behalf of Mr. Gear." The employer was not asked whether Gear was personally involved in the process.

While in Hawaii, Gear told his wife Trudy, who was still in Australia, that he wanted a divorce. In April 2016, Gear returned to Australia to divide up the marital property and bring property back with him to Hawaii. One of Gear's possessions was a Lithgow .22 caliber bolt action rifle. Gear disassembled the gun and brought some of its component parts back to Hawaii with him. Trudy later shipped him the gun safe and the remaining parts of the rifle.

In October 2016, Gear was fired from his job, which meant that he would need a new visa. At trial, Gear's new wife, Rhonda Kavanagh, explained that because H-1B visas are tied to employment, Gear lost his visa when he was fired in 2016. She also testified that she and Gear had created a new company before Gear was fired and "we established . . . a new visa for Mel under [that] company. And we worked on that in October and November and into December and January." The visa application form stated it was a "Petition for a Nonimmigrant Worker." But that form was prepared by an immigration attorney and signed by Gear's wife, not by Gear.

In January 2017, Gear returned to Hawaii from a trip abroad and was admitted under his new H-1B visa. On the visa itself, the "Visa Type/Class" is indicated as "H1B" with an issue date of January 5, 2017 and an expiration date of November 14, 2019.[1]

Sometime later in 2017, DHS was advised that Gear might have shipped a rifle from Australia to Hawaii. A DHS agent in Hawaii began an investigation and learned Gear was present in Hawaii on an H-1B visa. The agent then interviewed Gear's former coworkers, who reported Gear would "brag about owning firearms." The agent obtained a search warrant and, in July 2017, went with other agents to Gear's home to execute that warrant.

Upon arriving, the agents told Gear they were there to ask him about his visa. After a few questions related to his

---

[1] Gear was admitted until November 24, 2019 because individuals with H-1B visas may be "admitted to the United States" for the length of the visa "plus a period of up to . . . 10 days." 8 C.F.R. § 214.2(h)(13)(i)(A).

visa and his work, the agents began questioning Gear about whether he owned a firearm. Gear told them "he couldn't possess a firearm in the State of Hawaii because he was not a U.S. citizen." Gear also denied having a gun safe. The agents informed him they had received information from Australian officials that he owned a rifle. Gear admitted his ex-wife had shipped a rifle and gun safe to Hawaii but he claimed they had been thrown away "[b]ecause he didn't want [the rifle], he couldn't have it." The agents then told Gear they had a search warrant which prompted Gear to say "You know, guys, I want to be honest with you. The gun and gun safe is in the garage." The agents then went to the garage, found the gun safe, and obtained the rifle.

In December 2017, the government returned a single count indictment against Gear. The indictment alleged Gear had violated 18 U.S.C. § 922(g)(5)(B) by possessing a firearm while "being an alien who had been admitted to the United States under a nonimmigrant visa." The case proceeded to a four-day trial in May 2019. During the trial, the government and Gear stipulated that he had been admitted under a nonimmigrant visa. That stipulation did not, however, address Gear's knowledge of that fact.

At the close of evidence, the jury was instructed the government had to prove Gear "knowingly possessed" the rifle, that "had been shipped and/or transported in foreign commerce," and that Gear "was in the United States as an alien who had been admitted into the United States under a 'nonimmigrant visa.'" These elements were all that Ninth Circuit law required at the time. That is, the jury was merely required to find Gear had been admitted under a nonimmigrant visa but not that Gear was aware of anything about his visa status. The jury found Gear guilty on May 10, 2019, and sentencing was set for four months later.

Before Gear was sentenced, the United States Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019). That case addressed a different provision within the same statute at issue here, 18 U.S.C. § 922(g), which renders it unlawful for "nine categories of individuals" to possess firearms. *Id.* at 2194. The Supreme Court held that in a prosecution under § 922(g), the government must prove the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. Based on *Rehaif*, Gear filed a motion for new trial. Gear's central argument was that *Rehaif* required the jury be instructed it had to find Gear knew he had been "admitted to the United States under a nonimmigrant visa." 18 U.S.C. § 922(g)(5)(B).

The trial court denied the motion for a new trial. The court concluded Gear was not entitled to relief given the evidence presented at trial. In the court's view,

> the Government needed to establish that Gear knew that he possessed an H-1B visa (a question of fact), not that Gear knew that an H-1B visa was a nonimmigrant visa (a question of law). The distinction between proving knowledge of what kind of visa Gear had and knowledge that the visa is in the category of "nonimmigrant visas" is a distinction this court makes here.

Because the evidence was, in the district court's view, overwhelming that Gear knew he had been admitted under an H-1B visa, the court concluded any failure to instruct the

jury regarding Gear's knowledge was harmless.[2]    In September 2019, Gear was sentenced to fifteen months' imprisonment.

## II.

In all cases of statutory interpretation, we start with the text. *Limtiaco v. Camacho*, 549 U.S. 483, 488 (2007). Gear's statute of conviction says that "[w]hoever knowingly violates" 18 U.S.C. § 922(g) shall be subject to up to ten years' imprisonment. 18 U.S.C. § 924(a)(2). In turn, § 922(g) provides that, subject to some exceptions, it "shall be unlawful for any person . . . being an alien . . . admitted to the United States under a nonimmigrant visa" to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(5)(B). Read together then, federal law forbids a person from "knowingly" violating the prohibition on "being an alien . . . admitted . . . under a nonimmigrant visa" in possession of a firearm. 18 U.S.C. §§ 922(g)(5)(B), 924(a)(2).

The question here is: What does it mean to "knowingly" violate this statute? Conveniently, the Supreme Court has essentially supplied us the answer already. In *Rehaif*, the Court analyzed an adjacent provision, § 922(g)(5)(A)—the illegal-alien-in-possession prohibition—and told us how to interpret it. 139 S. Ct. 2191. The Court was clear: "As a matter of ordinary English grammar, we normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime." *Id.* at 2196

---

[2] The court chose to apply the "harmless error" standard instead of the "plain error" standard because "harmless error" was more favorable to Gear and, even under the favorable standard, Gear was not entitled to relief.

(simplified). This means the government had to establish the defendant knew he belonged to the "relevant category of persons barred from possessing a firearm." *Id*. at 2200. Under § 922(g)(5)(A), the "relevant category" was being "an alien . . . illegally or unlawfully in the United States," so the defendant had to know that he was such an alien. *Id*. at 2195–96. The Court reversed the judgment affirming Rehaif's conviction because the government failed to prove he knew he was an illegal alien. *Id.* at 2200.

Under a straightforward application of *Rehaif*'s textual command, the knowledge requirement must apply to the "relevant category of persons" here—aliens who were "admitted to the United States under a nonimmigrant visa." 18 U.S.C. § 922(g)(5)(B). Thus, to gain a conviction here, the government must prove Gear *knew* he was admitted into the country "under a nonimmigrant visa." It's really that simple. As a matter of text and precedent, we need not go any further.

Requiring knowledge of "nonimmigrant visa" status also flows from the principles that animated *Rehaif*. There, the Court recognized that it can be "entirely innocent" to possess a firearm "[a]ssuming compliance with ordinary licensing requirements." *Id*. at 2197. What made such conduct wrongful was not just that the defendant possessed a firearm, but that he belonged to a group of prohibited possessors. The Court applied the "longstanding presumption" that Congress intends a defendant to have knowledge of each "element[] that criminalize[s] otherwise innocent conduct." *Id*. at 2195 (simplified). In *Rehaif*, it was the defendant's *status* as an illegal alien that was the "crucial element separating innocent from wrongful conduct." *Id*. at 2197 (simplified). Without knowing this status, "the defendant may well lack the intent needed to make his behavior wrongful." *Id*.

As in *Rehaif*, the crucial element that makes possession of firearms wrongful here is that the possessor has the status Congress sought to disfavor: "nonimmigrant visa" holders. Like the other categories of prohibited possessors in § 922(g), Congress has made the legislative determination that such visa holders should not possess firearms. But to violate the statute a defendant must *know* he falls within the category of prohibited possessors; otherwise, he "does not have the guilty state of mind that the statute's language and purposes require." *Rehaif*, 139 S. Ct. at 2198.

A defendant must therefore know that he was admitted into the country under a nonimmigrant visa. Gear's statute of conviction incorporates the definition of "nonimmigrant visa" from another statute, which defines the term as "a visa properly issued to an alien as an eligible nonimmigrant by a competent officer as provided in this chapter." 8 U.S.C. § 1101(a)(26); 18 U.S.C. § 922(g)(5)(B). Another provision in the Immigration and Nationality Act identifies the "classes of nonimmigrant aliens." 8 U.S.C. § 1101(a)(15). One class of nonimmigrant aliens includes "an alien . . . who is coming temporarily to the United States to perform services . . . in a specialty occupation . . . who meets the requirements for the occupation specified in section 1184(i)(2) of this title." 8 U.S.C. § 1101(a)(15)(H)(i)(b). The visa for this class of nonimmigrants is what's known in agency jargon as the "H-1B visa," presumably so named after the class's subsection in the INA. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b).[3]

---

[3] *See* U.S. Citizenship and Immigration Services, *H-1B Specialty Occupations, DOD Cooperative Research and Development Project Workers, and Fashion Models*, https://www.uscis.gov/working-in-the-

So, under this statutory scheme, the government must show that the defendant knew his particular visa was "nonimmigrant." Such knowledge can be established by demonstrating Gear knew that his visa was classified as a "nonimmigrant visa," or by showing he knew the "offending characteristics" of his visa—i.e., the facts that make his visa a nonimmigrant one. *See Staples v. United States*, 511 U.S. 600, 620 (1994) (holding that defendant must know the "offending characteristics" of his gun that brings it within the statutory definition of a "firearm"); *see also McFadden v. United States*, 576 U.S. 186, 196 (2015) (holding that defendant must know a substance's "physical characteristics that give rise to [its] treatment" as a listed controlled substance).

Establishing that Gear simply knew he had an H-1B visa is not enough. A visa's label—that it is referred to as an "H-1B visa"—is not a fact that makes it a "nonimmigrant visa." Instead, what Congress proscribed was knowingly possessing a firearm with a "nonimmigrant visa," or, looking to what "nonimmigrant visa" actually means: a visa issued to an alien coming temporarily to the United States to perform services in a specialty occupation. *See* 8 U.S.C. § 1101(a)(26), (a)(15)(H)(i)(b), § 1184(i)(1); *see also Defensor v. Meissner*, 201 F.3d 384, 386 (5th Cir. 2000) (outlining requirements for an H-1B visa). Thus, the government must prove Gear's knowledge of these facts— not merely that Gear knew his visa was called an "H-1B visa."

The Supreme Court in *Rehaif* offered a hypothetical that confirms our analysis. The Court addressed a hypothetical

united-states/temporary-workers/h-1b-specialty-occupations-dod-cooperative-research-and-development-project-workers-and-fashion.

firearm owner convicted of a crime "punishable by imprisonment for a term exceeding one year," which makes him a felon under the felon-in-possession law. § 922(g)(1). But what if this person received only probation, and not a prison term, and didn't know the crime's maximum penalties? Would he have the required *mens rea* to know that he is in fact a felon? The Court suggested that such a person "does not have the guilty state of mind that the statute's language and purposes require." *Rehaif*, 139 S. Ct. at 2198.

That hypothetical probationer may be analogous to someone who enters the United States on an H-1B visa. Employers thus sometimes lure foreign employees with promises of permanent residency, and employees may think the H-1B visa confers immigrant status. Such a person may know that he or she has an H-1B visa, without any knowledge that it is a "nonimmigrant visa." If true, then he or she lacks the requisite guilty mind for violating § 922(g), like the hypothetical probationer in *Rehaif*. This underscores why a defendant must know that he or she has a nonimmigrant visa, not just an H-1B visa, under the statute.

## III.

Because Gear failed to properly object to the erroneous instructions, our review is for "plain error." Fed. R. Crim. P. 30(d), 52(b). That means we may reverse where "(1) there was error, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Becerra*, 939 F.3d 995, 999 (9th Cir. 2019). Gear undisputedly satisfies the first two plain error prongs. *See United States v. Benamor*, 937 F.3d 1182, 1186 (9th Cir. 2019) (holding the failure to instruct on the knowledge requirement of a § 922(g) offense is plainly

erroneous). Thus, the key inquiry is whether Gear showed that the error affected his substantial rights. To do so, he must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (cleaned up).

Gear cannot make this showing because the record overwhelmingly indicates that he knew it was illegal for him to possess a firearm, and thus, had the mens rea sufficient to violate § 922(g). For example, Gear admitted to Department of Homeland Security agents that he was barred from firearm possession because he was not a U.S. citizen. He tries to sidestep this admission by claiming that it constitutes hearsay and was untested during trial. But Gear fails to articulate how he would have proceeded differently at trial. Accordingly, Gear's conviction is **AFFIRMED.**

---

SILVER, District Judge, concurring:

I agree Melvyn Gear's conviction should be affirmed but write separately to explain one type of knowledge the per curiam opinion identifies that goes beyond what is required by 18 U.S.C. § 922(g)(5)(B) and *Rehaif v. United States*, 139 S. Ct. 2191 (2019). The per curiam opinion states the necessary "knowledge can be established" in two ways. First, "by demonstrating Gear knew that his visa was classified as a 'nonimmigrant visa.'" Second, by showing Gear "knew the 'offending characteristics' of his visa—i.e., the facts that make his visa a nonimmigrant one." The "offending characteristics" are identified as "a visa issued to an alien coming temporarily to the United States to perform services in a specialty occupation." To the extent the per curiam opinion suggests the government could alternatively

prove the first type of knowledge, *i.e.* Gear knew his visa was statutorily classified as a "nonimmigrant visa," I do not agree.

After *Rehaif*, and pursuant to the statute, an alien cannot possess a firearm if he knew he was admitted "under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act)." 18 U.S.C. § 922(g)(5)(B).    However, the referenced definition is unclear in that it states "[t]he term 'nonimmigrant visa' means a visa properly issued to an alien as an eligible nonimmigrant by a competent officer as provided in this chapter."    8 U.S.C. § 1101(a)(26). Unfortunately, there is not a clear and straightforward definition of "nonimmigrant."  Instead, the statutory scheme dictates that every alien is an "immigrant . . . except an alien who is within one of the following classes of nonimmigrant aliens."  8 U.S.C. § 1101(a)(15).  *See Korab v. Fink*, 797 F.3d 572, 576 n.5 (9th Cir. 2014) ("The Immigration and Nationality Act defines 'nonimmigrant' as any alien who has been admitted pursuant to one of the various visas set out in 8 U.S.C. § 1101(a)(15).").    The listed "classes of nonimmigrant aliens" includes the class relevant here, defined as aliens "coming temporarily to the United States to perform services . . . in a specialty occupation.  8 U.S.C. § 1101(a)(15)(H)(i)(b).

By tracing the statutory language and definitions regarding "nonimmigrant visas" from beginning to end it is possible to make sense of the statutory prohibition regarding firearms.    Combining   the   statutory   definition   of "nonimmigrant visa" with the firearms statute means it is unlawful for an alien to possess a firearm if he knew he was admitted under a visa granted to an alien coming temporarily to the United States to perform services in a specialty

occupation.    18   U.S.C.   § 922(g)(5)(B),   8   U.S.C.
§ 1101(a)(15)(H)(i)(b).    Thus, as relevant here, the post-
*Rehaif* knowledge requirement is that the individual knew he
1) was an alien; 2) who was admitted temporarily to the
United States; 3) to perform services in a specialty
occupation.  The government must prove these facts, not that
the alien knew his visa was "classified" a "nonimmigrant
visa."[1]

Reviewing Gear's knowledge of the characteristics of his
visa makes the "plain error" analysis straightforward.  To
meet the third prong of the plain error analysis, Gear had to
show the error was "prejudicial" in the sense that it "affected
the outcome of the trial."  *United States v. Marcus*, 560 U.S.
258, 262 (2010) (quoting *United States v. Olano*, 507 U.S.
725, 734 (1993)).    Here, the jury was presented with
overwhelming evidence Gear knew the characteristics of his
visa.

First, Gear stipulated he was an alien.  Second, Gear's
passport, which was in his possession, noted he was admitted
to the United States only "until November 24, 2019."  Gear's
visa, also in his possession, stated it expired in November
2019.  Accordingly, Gear knew he was an alien coming to

---

[1] This reasoning prevents a conflict with the recent opinion *United States v. Singh*, 979 F.3d 697 (9th Cir. 2020).  There, the panel affirmed a conviction for violating the same firearms statute.  In *Singh*, the defendant had been admitted under B1/B2 visas which are nonimmigrant visas granted to an alien with "a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business [or] pleasure."  8 U.S.C. § 1101(15)(B).  The conviction was affirmed because there was overwhelming evidence the defendant had a foreign residence he did not intend to abandon and he was visiting the United States only temporarily for business or pleasure. There is no discussion in *Singh* of evidence the defendant knew his visas statutorily qualified as "nonimmigrant visas."

the United States temporarily. As for the third requirement that Gear knew he would be performing a "specialty occupation," there was more than enough evidence.

The jury heard from Gear's wife that she and Gear had recently established a limited liability company. Gear's wife testified she and Gear "established" the "new visa for Mel under our company." She also testified "we," meaning she and Gear, "worked on [obtaining the new visa] in October and November and into December and January." Thus, Gear was heavily involved in applying for the visa. The application form completed by Gear's wife on behalf of their joint company identified Gear's then-current status as "H1B - Specialty Occupation" with Gear seeking to continue the classification of "H-1B Specialty Occupation" under the new company. In addition, the application identified Gear as "Chief Technical Engineer" for a company devoted to "[i]nstallation of solar and other renewable energy systems" with an annual salary of $100,000. Given these facts, Gear knew he was involved in a "specialty occupation."

The government was not required to prove Gear knew his visa was classified as a "nonimmigrant visa." Instead, the government had to prove Gear knew the relevant characteristics of his visa. Because there was overwhelming evidence he knew those characteristics, I concur in the judgment affirming his conviction.

---

BUMATAY, Circuit Judge, concurring in part and dissenting in part:

No student of law or history can deny the paramount importance of the right to a jury trial. This essential right is the only guarantee found in both the articles of the

Constitution and the Bill of Rights. U.S. Const. Art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury[.]"); U.S. Const. amend. VI, § 2 ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]"). The denial of this right was specifically cited in the Declaration of Independence, which indicted King George III "for depriving [the People] in many cases, of the benefits of Trial by Jury." And as Alexander Hamilton explained, "[t]he friends and adversaries of the plan of the convention, if they agree in nothing else, concur at least in the value they set upon the trial by jury: Or if there is any difference between them, it consists in this, the former regard it as a valuable safeguard to liberty, the latter represent it as the very palladium of free government." *See* Federalist No. 83.

The constitutional right to a jury trial includes the right "to have a jury determine, beyond a reasonable doubt, [a defendant's] guilt of *every element* of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995) (emphasis added). This right requires that "the truth of every accusation . . . be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbors." 4 W. Blackstone, Commentaries on the Laws of England 343 (1769). So while harmless and plain error might be necessary doctrines, *see Neder v. United States*, 527 U.S. 1, 8 (1999), we must tread carefully before overtaking the jury's role to determine guilt on every element.

Here, Gear has established that there is a reasonable probability that the outcome of his trial would be different if the jury were properly instructed. Rather than conjecture

about his guilt from the bench, we should return the question to where it is constitutionally reserved: the jury box. Because we fail to do so, I respectfully dissent from Part III of the court's decision and the judgment affirming the conviction.

## I.

The court applies plain-error analysis to this claim. Under that review, the defendant is entitled to reversal when "(1) there was error, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Becerra*, 939 F.3d 995, 999 (9th Cir. 2019).

## A.

Since the first two prongs of plain-error review are clearly satisfied here, the key inquiry is whether Gear showed that the error affected his substantial rights. *See United States v. Benamor*, 937 F.3d 1182, 1188 (9th Cir. 2019). This means he must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (simplified).

And since a three-judge panel is no substitute for twelve of Gear's peers, our review is not simply whether *we* think the result would've been different. Instead, we review the case through makeshift juror glasses. We "'conduct a thorough examination' of the evidence in the record and ask whether 'it is clear *beyond a reasonable doubt* that a rational jury would have found the defendant guilty absent the error.'" *United States v. Conti*, 804 F.3d 977, 981 (9th Cir. 2015) (quoting *Neder*, 527 U.S. at 17) (emphasis added).

Before upholding a conviction rendered on erroneous jury instructions, we demand "strong and convincing evidence" that the jury would've reached the same result even if it had been properly instructed. *United States v. Alferahin*, 433 F.3d 1148, 1158 (9th Cir. 2006).

Far from meeting this standard, the record here reveals only weak and debatable evidence that Gear knew he was "admitted . . . under a nonimmigrant visa." *See* 18 U.S.C. §§ 922(g)(5)(B), 924(a)(2). As the court articulates, § 922(g)(5)(B)'s knowledge requirement can be established in two ways: (1) "[b]y demonstrating Gear knew that his visa was classified as a 'nonimmigrant visa;'" or (2) "by showing he knew the 'offending characteristics' of his visa—i.e., the facts that make his visa a nonimmigrant one." Opinion at 11.

Regarding the first method, little evidence supports the conclusion that Gear knew his "H-1B" visa was classified as "nonimmigrant." Crucially, Gear's visa itself doesn't say "nonimmigrant" anywhere—it only says "H-1B." But as we explained, Gear's knowledge that he has an H-1B visa doesn't satisfy the knowledge requirement. Opinion at 11. The government states its strongest evidence showing this knowledge is a visa-application form entitled "Petition for Nonimmigrant Worker." Sprinkled throughout the form, including in its title, is the word "nonimmigrant." There's just one problem: the record doesn't show whether Gear filled out this form himself, signed it, or even read it. On the contrary, the form was prepared by a third party and signed by Gear's wife.

The evidence relied on by the court doesn't change this analysis. It points to Gear's admission that he "couldn't possess a firearm in the State of Hawaii because he was not a U.S. citizen." But this is hardly ironclad evidence that Gear knew he held a "nonimmigrant" visa. In fact, this

statement suggests that Gear thought only *citizens* could possess a gun—which isn't the law—and demonstrates only that he knew was not a citizen.

The same deficiencies exist with the evidence regarding Gear's knowledge of the nonimmigrant visa's characteristics—the second way to satisfy this element. Here, the only relevant nonimmigrant visa is an H-1B visa, which goes to someone who is (1) an alien, (2) coming temporarily to the United States, (3) to perform services in a specialty occupation. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b). I agree with the concurrence that the evidence readily proves Gear's knowledge of the first two H-1B characteristics. *See* Silver Concurrence at 15–16. But I disagree that the evidence sufficiently shows Gear knew the last fact—that he was in the country to perform a "specialty occupation."[1] The only evidence in the record remotely establishing Gear's "specialty occupation" was the visa-application form, which includes the words "Specialty Occupation" and identifies Gear's role as "Chief Technical Engineer." But the government never adduced evidence regarding Gear's part in filling out the visa-application form or corroborating the information contained within it. The concurrence suggests that "Gear was heavily involved in applying for the visa," *id.* at 16; yet, the only evidence for that is his wife's use of the word "we" while testifying about the application process *in general*. This is not enough in my opinion.

Significantly, Gear's wife's testimony might have never reached the jurors' ears if the parties had been properly

---

[1] The term "specialty occupation" means an occupation that requires "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent)." 8 U.S.C. § 1184(i)(1).

instructed on § 922(g)(5)(B)'s knowledge requirement. Had this element been included in the jury instructions, Gear could have altered his trial strategy. For example, Gear would have refrained from putting his wife on as a witness or encouraged her to invoke a spousal privilege if called by the government. *See United States v. Griffin*, 440 F.3d 1138, 1143–44 (9th Cir. 2006) (explaining spousal privilege). Or he could have challenged the introduction of the visa-application form or his verbal admissions to law enforcement. But none of this happened because the only contested issue at trial (in light of the erroneous jury instructions) was whether Gear knowingly *possessed* the gun. This is the usual problem with our plain-error review of omitted-element jury instructions. *See United States v. Jordan*, 291 F.3d 1091, 1096 (9th Cir. 2002) (explaining that in such cases courts "do not have the ability . . . simply to determine whether a proper jury instruction would have made any difference" because the element hasn't been litigated).

While skillful prosecutors may be able to convince a jury based on the evidence introduced at trial that Gear knew he had a nonimmigrant visa, reaching this conclusion on the jury's behalf requires us to build a "veritable fairyland castle" of government-friendly inferences. *Minnick v. Mississippi*, 498 U.S. 146, 166 (1990) (Scalia, J., dissenting). But a jury could reject these inferences and reach the opposite conclusion. Because the evidence on this question is thin, I cannot confidently say that no reasonable juror would have found sufficient doubt about Gear's knowledge to vote for acquittal.

## B.

The fourth prong of plain-error review has also been met: the missing element from the jury instructions "'seriously

affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 736 (1993) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). We've previously recognized that the denial of a defendant's "constitutional right to have all elements of the crime submitted to the jury" is a "serious concern[], going to the very heart of the criminal proceeding." *United States v. Murphy*, 824 F.3d 1197, 1205 (9th Cir. 2016).

I see no reason to depart from that conclusion here. Gear was deprived of his basic right to have the jury decide every element of the offense charged. The error also led him to forego possibly winning defenses and trial tactics. And the evidence that the jury would have convicted him anyway is too thin for us to say that close is close enough. *See id.* ("[T]he strength of the evidence is a factor."). Accordingly, allowing Gear's conviction to stand poses a "greater threat to the integrity and fairness of judicial proceedings" than reversal would. *Alferahin*, 433 F.3d at 1159.

## II.

"[T]he Constitution does not trust judges to make determinations of criminal guilt." *Neder*, 527 U.S. at 32 (Scalia, J., concurring in part and dissenting in part) (emphasis omitted). Judges—and federal judges in particular—are "proper objects of that healthy suspicion of the power of government," which prompted the people to "reserve[] the function of determining guilt *to themselves*, sitting as jurors." *Id.* When a defendant can show a reasonable probability that the jury would have reached a different outcome, our role is to send the case back to the jury rather than "reviewing the facts ourselves and pronouncing the defendant without-a-doubt guilty." *Id.*

Because Gear has made this showing, we should leave the determination of Gear's guilt to the jury.

I respectfully dissent from the judgment of the court.